# UNITED STATES *v.* INGRAM.

## APPEAL FROM THE COURT OF CLAIMS.

No. 82. Argued December 9, 1898. — Decided January 3, 1899.

In 1890, appellee, under the Desert Land act of 1877 applied to reclaim and enter a tract of land, which was part of an even-numbered section of lands within the limits of the grant to the Union Pacific Railway Company. The entry was approved, the claimant made the preliminary payment thereon and received a certificate of entry. Subsequently he abandoned the entry, and it was cancelled in 1895. This action was brought to recover the sum so paid. *Held*, that, as he had voluntarily abandoned the entry, he had no cause of action for the sum which he paid to initiate it.

*United States* v. *Healey*, 160 U. S. 136, examined and shown not to be inconsistent until this decision.

ON August 2, 1890, the appellee, William F. Ingram, applied to the local land office at Salt Lake City, Utah, under the Desert Land act of March 3, 1877, 19 Stat. 377, c. 107, to reclaim and enter a tract of land containing 236.55 acres. The land so sought to be reclaimed and entered was a part of an even-numbered section of lands within the limits of the grant to the Union Pacific Railway Company. The entry was approved by the local land office; the claimant paid the sum of $118.28, being 50 cents per acre, the preliminary payment thereon, and received an ordinary certificate of entry. He failed, however, to reclaim the land by conducting water on to it, as provided by the Desert Land act, and abandoned his entry, which, on December 19, 1895, was cancelled. Thereafter this suit was brought to recover the money which he had paid to the local land officers. The Court of Claims, while expressing an opinion, on a demurrer to the petition, adversely to the contention of the petitioner, 32 C. Cl. 147, finally entered a decree in his favor, from which decree the United States appealed to this court.

*Mr. George Hines Gorman* for appellants. *Mr. Assistant Attorney General Pradt* was on his brief.

*Mr. Russell Duane* for appellee.  *Mr. Harvey Spalding* and *Mr. E. W. Spalding* were on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The contention of the appellee is that no valid entry can be made under the Desert Land act of land within the place limits of a land grant to railroad corporations; that therefore the attempted entry was absolutely void, and that if he had fully complied with the provisions of that act he could not have acquired a good title to the lands entered; that he was therefore justified in abandoning the entry which he had attempted to make; that the Government had received money which it had no right to receive, and was under an implied obligation to return it — an obligation which could be enforced by an action in the Court of Claims. His main reliance is on *United States* v. *Healey,* 160 U. S. 136; but the singular fact is that in that case a title by patent to an even-numbered section within the limits of a railroad land grant acquired under the Desert Land act was not questioned, and a claim of the patentee to recover the difference between $2.50 per acre, which he had paid in accordance with the statute in respect to railroad land grants, and $1.25 which he insisted was all he was required to pay under the Desert Land act, was rejected. Counsel for appellee pick out a sentence or two in the opinion in that case, and, severing them from the balance, insist that this court decided that land within the place limits of a railroad land grant is wholly removed from the operation of the Desert Land law, as much so as if it had already been conveyed to a private owner, and conclude that, being so wholly separated from the reach of that law, an attempted entry thereunder is absolutely void, and may be abandoned by the entryman at any time. It seems a little strange to have this contention pressed upon us in view of the fact that a patent for lands within a railroad land grant was not disturbed by that decision, and a claim to recover an excess payment was repudiated. Nowhere in the

opinion is there an intimation that the patentee did not acquire a perfect title, no suggestion that the whole proceeding was void and the land patented still the property of the Government, or even that it had the right to maintain a suit to set aside the patent as a cloud upon its title. And certainly if the title conveyed by the patent was absolutely void, then the patentee had paid not only the half which he sought to recover but the entire purchase money for nothing, and should at least have been allowed to recover the half which he sued for.

It may be well to refer to the several statutes of Congress. The general policy in respect to railroad grants, expressed in the many statutes making such grants, and finally carried into the Revised Statutes in section 2357, is that while the ordinary price of public lands is $1.25 an acre, " the price to be paid for alternate reserved lands, along the line of railroads within the limits granted by any act of Congress, shall be $2.50 per acre." One hundred and sixty acres might be preëmpted at that price, or eighty acres homesteaded. (Rev. Stat. sec. 2289.) In other words, Congress, in no manner limiting either the right of preëmption or homestead, simply declared that these alternate reserved lands should be considered as worth $2.50 instead of $1.25, the ordinary price of public lands. All appropriations by individuals were based upon that valuation, but the right to appropriate was in no manner changed. The reason for this addition to the price of alternate reserved sections within a railroad grant has been often stated by this court, and is referred to in the opinion in *United States* v. *Healey, supra.* It is that a railroad ordinarily enhances the value of contiguous lands, and when Congress granted only the odd sections to aid in the construction of one it believed that such construction would make the even and reserved sections of at least double value.

This difference in price was based, as will be perceived, solely on the matter of location, and not at all upon any distinction in the character or quality of the land, and the difference in price was the only matter that distinguished between an entry of lands within and those without the place

limits of a railroad. Such being the general policy of the Government in respect to public lands, Congress in 1877 passed the Desert Land act. This act, while limited in its operation to certain States and Territories, in terms applied to "any desert land" within them. It provided for reclamation by irrigation, gave three years in which to accomplish such reclamation, and permitted the entry of not exceeding 640˙acres. The only substantial advantages of an entry under the Desert Land act over an ordinary preëmption were in the amount of land and the time of payment. Six hundred and forty acres could be taken under the one, and only one hundred and sixty under the other. The price was the same, but under the one only twenty-five cents per acre was payable at the time of the entry, and the balance was not required until, at the end of three years, the reclamation was complete; while under the other the entire $1.25 was payable at the time of the entry. These advantages were offered to induce reclamation of desert and arid lands.

Now, it is a well-known fact that along the lines of many land grant railroads are large tracts of arid lands — desert lands within the very terms of the statute. Indeed, nearly every transcontinental line runs for long distances through these desert lands. Did Congress act on the supposition that no inducement was necessary to secure the reclamation of the arid public lands within the place limits of those grants? Do not the reasons for legislation in respect to lands remote from railroads have the same potency in respect to lands contiguous thereto? If Congress had intended to exclude lands within the place limits of railroads from the scope of this act would it have said "any desert land," or defined "desert lands" as broadly as it did by section 2, which reads:

"Sec. 2. That all lands, exclusive of timber lands and mineral lands, which will not, without irrigation, produce some agricultural crop, shall be deemed desert lands within the meaning of this act, which facts shall be ascertained by proof of two or more credible witnesses under oath, whose affidavits shall be filed in the land office in which said tract of land may be situated."

The reasons which established and justified the policy of double price for the former apply as fully to lands which had to be reclaimed before they could be cultivated as to lands which needed no reclamation. Contiguity to the railroad is the same fact in each. The significance of this was recognized in the *Healey case.* Indeed, the whole controversy in that case was as to the matter of price, and grew out of the fact that after the passage of the Desert Land act the Interior Department at first ruled that its effect was to reduce the price of even sections within railroad place limits, entered under it, from $2.50 to $1.25 an acre, while in 1889 a change was made in its rulings, and it was thereafter held that the act worked no such reduction. Secretary Noble, in *Tilton's case*, decided March 25, 1889, 8 Land Dec. 368, 369, said, and his language was quoted in our opinion:

"Under such construction, section 2357 of the Revised Statutes and the Desert Land act do not conflict, but each has a separate and appropriate field of operation; the former, regulating the price of desert lands reserved to the United States along railway lines; and the latter, the price of other desert lands not so located. There is nothing in the nature of the case which renders it proper that desert lands be made an exception to the general rule any more than lands entered under the preëmption laws. Lands reserved to the United States along the line of railroads are made double minimum in price because of their enhanced value in consequence of the proximity of such roads. Desert lands subject to reclamation are as much liable to be increased in value by proximity to railroads as any other class of lands, and hence the reason of the law applies to them as well as to other public lands made double minimum in price. To hold desert lands an exception to the general rule regulating the price of lands reserved along the lines of railroads would be to make the laws on this subject inharmonious and inconsistent."

Other rulings of the Land Department were cited, in no one of which was there any denial of the right to enter lands along a railroad under the Desert Land law. It was after these citations that the language referred to by counsel was used.

That language must be interpreted in view of the fact that the only contention was as to the price. It means simply that the court did not consider the Desert Land act applicable as a whole and solidly to the reserved sections along a railroad so as to subject them all to its provisions. In other words, the Desert Land act did not supersede and destroy the proviso of section 2357 in reference to a double price for such reserved sections. We closed the discussion in reference to this matter in these words:

"Giving effect to these rules of interpretation, we hold that Secretaries Lamar and Noble properly decided that the act of 1877 did not supersede the proviso of section 2357 of the Revised Statutes, and, therefore, did not embrace alternate sections reserved to the United States by a railroad land grant.,

"It results that prior to the passage of the act of 1891, lands such as those here ·in suit, although within the general description of desert lands, could not properly be disposed of at less than $2.50 per acre. Was a different rule prescribed by that act in relation to entries made previously to its passage?" 160 U. S. 147.

The first of these paragraphs is one of the sentences referred to by counsel and quoted in their brief. In it we do say "that Secretaries Lamar and Noble properly decided that the act of 1877 . . . did not embrace alternate sections reserved to the United States by a railroad land grant," but the full meaning of that language is disclosed only when we replace the omitted words "did not supersede the proviso of section 2357 of the Revised Statutes, and, therefore." And when we turn to what Secretaries Lamar and Noble decided, we find that they ruled, not that lands within the place limits of a railroad land grant could not be entered under the Desert Land law, but simply that they could not be entered for the price named in that law, $1.25 per acre, but were subject to the general provision of double price. The other sentence referred to by counsel is similar, and while taken literally and disconnectedly may give some countenance to their contentions, yet when read in the light of the entire opinion, manifestly was intended

to mean no more than that the Desert Land act was not applicable in the matter of price to the reserved sections within a railroad land grant. This conclusion appears also in the last paragraph above quoted, where we say that "lands such as those here in suit, although within the general description of desert lands, could not properly be disposed of at less than $2.50 per acre." Not that they could not be disposed of at all under the Desert Land law, but only not at the price fixed by that law.

The same conclusion appears subsequently, when reviewing the act of 1891, it was held that it had no effect upon the price of lands entered before its date, our language being —

" We are of opinion that cases initiated under the original act of 1877, but not completed, by final proof, until after the passage of the act of 1891, were left by the latter act — at least as to the price to be paid for the lands entered — to be governed by the law in force at the time the entry was made. So far as the price of the public lands was concerned, the act of 1891 did not change, but expressly declined to change, the terms and conditions that were applicable to entries made before its passage. Such terms and conditions were expressly preserved in respect of all entries initiated before the passage of that act." 160 U. S. 149.

We may remark in passing that the entry in this case was before the act of 1891, and therefore, under the language just quoted, it is unnecessary for us to notice any of its provisions.

It follows from these considerations that if the petitioner Ingram had fully complied with the terms of the Desert Land act he could, by the payment of $2.50 an acre, have acquired title to the lands he sought to enter. Voluntarily abandoning his entry, he has no cause of action for the sum which he paid to initiate it. There is nothing in *Frost* v. *Wenie,* 157 U. S. 46, which conflicts with this conclusion, for there the decision simply was that lands which Congress held under a trust to sell for the benefit of Indians could not be given away under the homestead law, and hence that such law must be limited,

in its application to the Fort Dodge reservation, to such lands as were not covered by the trust.

> *The judgment of the Court of Claims is reversed, and the case remanded to that court, with directions to enter a judgment for the defendant.*